AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF Massachusetts _____

UNITED STATES OF AMERICA

V.

Loren E. Harty
49 Maywood Street, Roxbury, MA
DOB 9/28/75

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 04-M00005-LPC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about January 20, 2004 in Suffolk county, in the District of Massachusetts defendant(s) did, (Track Statutory Language of Offense)

knowingly possess, in and affecting commerce, a firearm, to wit: a Ruger .357 caliber revolver and ammunition, after having been convicted of a crime punishable by more than one year in jail.

in violation of Title 18 United States Code, Section(s) 922(g)(1).

I further state that I am a(n) ATF Special Agent and that this complaint is based on the following
                                  Official Title

facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_Lisa A Rudnicke_
Signature of Complainant

Sworn to before me and subscribed in my presence,

03-18-2004                                    at        Boston, Massachusetts
Date                                                    City and State

Lawrence P. Cohen
United States Magistrate Judge                          _____
Name & Title of Judicial Officer                        Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

AFFIDAVIT OF SPECIAL AGENT LISA RUDNICKI

I, Lisa Rudnicki, having been duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF") and have been so employed for eight years. As a Special Agent, my duties include the investigation of various federal firearms violations, including illegal possession, sale and trafficking of firearms. I have been assigned to the Boston Field Division of ATF for approximately 18 months.

2. I make this affidavit in support of a complaint charging Loren E. Harty, DOB: 09/28/75, with a violation of 18 U.S.C. § 922 (g)(1), as a previously convicted felon in possession of a firearm and ammunition.

3. As an ATF Agent, I am aware that it is a violation of 18 U.S.C. § 922 (g)(1) for a person who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year to knowingly possess a firearm or ammunition in or affecting commerce.

4. The statements contained in this affidavit are based on my own investigation and on information provided to me by members of the Boston Police Department.

5. At approximately 4 p.m. on January 20, 2004, the

Boston Police Department ("BPD") received two 911 calls reporting gunshots fired at 42 Julian Street in the Roxbury section of Boston. At least one of those reports included a description of the shooter as a black, Hispanic male, approximately 30 years old, approximately 5'4", wearing a black jacket with a gun in his waistband. Shortly after the initial call, the BPD received information that the shooter was walking on Blue Hill Avenue "toward the liquor store." With this information, the Boston Police dispatcher radioed the information to area cruisers.

6. Upon hearing the dispatch, BPD officers responded to 42 Julian Street, where the officers identified three prospective witnesses to this offense, Mark McCalister ("McCalister"), King Belin ("Belin"), and Damian Wiley ("Wiley"). These witnesses were subsequently interviewed at the scene. Wiley explained to the officers that he was walking home from school on Blue Hill Avenue when he met Belin. At that point a man, later identified as HARTY, came up to them and began to speak with them. HARTY asked them "What do you got?" Wiley and Belin said that they did not know the man and tried to get him to leave them alone. HARTY said "You know me, I'm L". HARTY then began to yell at them and attempted to start a fight. He followed them to

42 Julian Street but then walked away. Approximately ten minutes later, the three young men heard HARTY screaming outside of 42 Julian Street. HARTY was yelling "Come on out, I am going to pop you." At this point, Wiley, Belin, and McCalister looked out of the apartment window and saw HARTY outside. McCalister went outside himself to tell the man to leave. HARTY said to him, "Tell them niggers to come out here, I am going to pop them."

7. McCalister explained that as this was happening, the resident of Apartment 1 at 42 Julian Street, Eric Gaines, came home and was entering 42 Julian Street. According to McCalister, HARTY pulled out a silver revolver and pulled back the hammer on the weapon. McCalister then ran up the stairs and into the house. When he reached the apartment, he heard a loud bang that he believed was a gunshot. HARTY then ran up to the door of Apartment 2 and began kicking the door and yelling "I'm going to get you, motherfuckers". Officers at the scene observed two boot marks with snow on the front door to Apartment #2.

8. At the same time that officers were responding to 42 Julian Street, Boston Police Officers Harber and Gately responded to the area of Clifford and Blue Hill Avenue. Officers Harber and Gately knew the area well and knew that

3

there was a liquor store approximately one block from Julian Street at the corner of Clifford and Blue Hill Avenue. As they neared the liquor store the officers saw several people but only one who appeared to match the description. That man (later identified as Loren HARTY) was across the street from the liquor store standing in front of 170 Blue Hill Avenue. The officers described HARTY as a Hispanic male, approximately 5'6", wearing a black jacket. Officer Harber knew the Hispanic male to be Loren HARTY ("HARTY"). Officer Harber also knew that HARTY had been arrested in the past for possession of a firearm as well as other felony offenses.

9. As the officers approached HARTY, they noticed him to be extremely nervous. As HARTY was being pat frisked, he stated without provocation, "I don't have nothing. I don't have no gun."

10. Officers Harber and Gately then spoke by radio with the officers at 42 Julian Street and a decision was made to bring HARTY back to that location for a show-up identification. The officers brought HARTY to 42 Julian Street. All three young men told the officers that they thought they could identify the assailant. Upon arrival at 42 Julian Street, HARTY was then taken out of the police car

4

on the street below. According to officers at the scene, Wiley, Belin and McCalister looked at HARTY from the second floor window and identified him as the man involved in the incident. However, Belin maintains that he never looked outside to identify HARTY. Wiley, Belin and McCalister all agree, though, that Wiley and McCalister looked out and identified HARTY.

11. Further investigation at scene revealed what appeared to be a bullet hole in the floor of the first floor hallway and bullet fragments on the cellar floor in the area directly below the front hallway. This evidence was consistent with the suspect having pointed the gun downward and firing a shot directly into the floor. While they were investigating this matter, the officers were approached by a female neighbor, Mariluz Cortez, who resided at 38 Julian Street. She reported that she had sent her 12 year old son outside to retrieve something and he came running back inside and said that there was a man with a gun outside. Ms. Cortez said she went to the window and saw the man that the police officers had in the police car (HARTY) waving a grey colored handgun at the second floor window of 42 Julian Street and yelling for someone to come outside. Ms. Cortez said that HARTY then walked behind 4 Rand Place and then out

to Blue Hill Avenue headed toward the liquor store. The officers spoke with Eric Gaines, the resident of Apartment 1. Mr. Gaines told the police that he was returning home when he saw HARTY talking to Mark McCalister. Gaines then saw HARTY take a silver revolver from his waist. Gaines then ran into the house and closed the door.

12. Officer Gately followed the route that Ms. Cortez described the suspect as having traveled. This route leads directly to the area where the defendant was apprehended. When Officer Gately went behind the building, he found a single set of footprints in the snow leading toward Rand Place. Officer Gately later examined HARTY'S boots and found that the tread on his boots appeared to match the tread impression that he saw in the footprints in the snow. Officer Gately followed the footsteps to a field at the intersection of Julian Street and Rand Place. There, Officer Gately found a clearing in the snow. In that spot, Officer Gately found two rocks with a red brick bridging the space between them. The officer lifted the brick and saw a silver colored revolver with a black handle. Detective Tyrone Camper from the Ballistics Unit arrived to recover the firearm, a Ruger .357 caliber revolver, bearing serial number 17063692, loaded with 4 live rounds of Remington

15. Based on the foregoing, I have probable cause to believe that, on January 20, 2004, Loren E. HARTY, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did posses, in and affecting commerce, a firearm and ammunition, in violation of Title 18, United States Code, Section 922 (g)(1).

Lisa A. Rudnicki
Special Agent, ATF

Sworn and subscribed to before me this eighteenth day of March 2004.

LAWRENCE P. COHEN
U.S. Magistrate Judge